FILED13 JUL '22 14:26USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:20-cr-00228-SI |
| v. | SUPERSEDING INDICTMENT |
| ROBERT J. JESENIK,<br>ANDREW N. MacRITCHIE, and<br>BRIAN K. RICE, | 18 U.S.C. §§ 2, 1014, 1343, 1349, and 1956(h) |
| Defendants. | Forfeiture Allegations |

THE GRAND JURY CHARGES:

GENERAL ALLEGATIONS

At all times relevant to this Superseding Indictment:

1. ROBERT J. JESENIK ("JESENIK") was a resident of West Linn, Oregon.

2. ANDREW N. MacRITCHIE ("MacRITCHIE") was a resident of Lake Oswego, Oregon, and New York, New York.

3. BRIAN K. RICE ("RICE") was a resident of Portland, Oregon.

4. JESENIK founded the Aequitas group of companies, which were located in Lake Oswego, Oregon, and included, among others, Aequitas Management, LLC, Aequitas Holdings, LLC, Aequitas Commercial Finance, LLC, Aequitas Capital Management, Inc., and Aequitas Investment Management, LLC (hereinafter collectively referred to as "Aequitas"). Defendants and others used Aequitas Commercial Finance ("ACF") and other Aequitas-related companies to

**Superseding Indictment**  **Page 1**

solicit investors through the issuance of promissory notes and interests in Aequitas-created investment funds, many of which were purportedly backed by trade receivables in education, health care, transportation, and other consumer credit areas.

5. JESENIK was Chief Executive Officer in the Aequitas structure, controlled the Aequitas structure, and had ultimate decision-making authority over Aequitas's activities.

6. MacRITCHIE was an Executive Vice President and the Chief Compliance Officer within the Aequitas structure. As Chief Compliance Officer, MacRITCHIE was responsible for the development and implementation of risk management and compliance processes and procedures. MacRITCHIE also established and operated Aequitas's New York Office and directed Aequitas's "Lux Fund," a Luxembourg-based fund used to solicit international investors.

7. RICE was an Executive Vice President within the Aequitas structure and President of Aequitas Wealth Management as of October 2014. Among his responsibilities at Aequitas, RICE oversaw the solicitation of investments through registered investment advisors ("RIAs") and managed certain RIAs that were affiliated with Aequitas.

8. Brian A. Oliver was an Executive Vice President within the Aequitas structure.

9. Olaf Janke was an Executive Vice President and Chief Financial Officer within the Aequitas structure. He resigned in the Spring of 2015.

## COUNT 1
### (Conspiracy to Commit Mail and Wire Fraud)
### (18 U.S.C. § 1349)

10. Beginning no later than in or about June 2014, and continuing through in or about February 2016, in the District of Oregon and elsewhere, defendants JESENIK, MacRITCHIE, and RICE, and others, known and unknown, knowingly conspired, combined, confederated, and

agreed with each other and with others, known and unknown, to commit mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

## MANNER AND MEANS AND SCHEME TO DEFRAUD

11. Defendants, their co-conspirators, and others under their control used the following manner and means, among others, to carry out the conspiracy and scheme to defraud:

12. Defendants, their co-conspirators, and others under their control solicited individuals to invest in a variety of notes and investment funds, many of which were purportedly backed by trade receivables in education, health care, transportation, and other consumer credit areas. Defendants and their co-conspirators used the ACF Private Note and the Income Opportunity Fund II ("IOF II") as two of the principal vehicles to defraud investors.

13. Defendants, their co-conspirators, and others under their control created and approved, and caused to be created and approved, promotional and other investment materials that contained material misrepresentations and misleading half-truths, including material misrepresentations and half-truths about the uses of investor money, the financial health and strength of Aequitas, Aequitas's investments and investment strategies, and the inherent risks of those investments and investment strategies.

14. Defendants and their co-conspirators mailed and emailed, and caused others to mail and email, the promotional and other investment materials to investors and investment advisors, with each mailing or wire being a separate execution of the scheme to defraud.

15. Defendants, their co-conspirators, and others under their control made similar material misrepresentations and offered materially misleading half-truths in person when soliciting and discussing the status of investments with investors and investment advisors.

16.  The false and misleading promotional materials and in-person solicitations orchestrated by defendants and their co-conspirators concealed material facts about Aequitas and its operations, including the facts that Aequitas: was consistently in liquidity and cash-flow crises; used the majority of new investor money to repay prior investors and to pay operating expenses rather than buy trade receivables or other income-generating assets; and had insufficient collateral to secure the notes it sold to investors.

17.  In order to raise funds to redeem previously issued notes and to address other urgent liquidity shortfalls, including operating expenses, defendants, their co-conspirators, and others under their control occasionally offered notes with shorter terms and higher interest rates, which defendants referred to internally as "blue light specials." Defendants, their co-conspirators, and others under their control led investors to believe that investors' money would be used predominantly to buy trade receivables or other income-generating assets. Instead, defendants, their co-conspirators, and others under their control used the investors' funds to pay operating costs and to repay other investors.

18.  Defendants and their co-conspirators used an intercompany loan to Aequitas Holdings, LLC (hereinafter referred to as the "Holdings Note") to prop up ACF and other Aequitas entities and to mislead investors. Defendants, their co-conspirators, and others under their control counted the Holdings Note as an asset even though defendants and others knew that the note was woefully under-collateralized and could not be repaid without the occurrence of several speculative contingencies. Defendants, their co-conspirators, and others under their control concealed these facts from investors, misrepresenting the Holdings Note as ACF's most valuable asset and misleadingly describing it in marketing materials as "corporate debt."

19. Based on defendants' and others' misrepresentations and half-truths, including material misrepresentations and half-truths about the nature of the various investments and investment strategies, the use of investor proceeds, and the risk of the investments, victims invested more than $400 million from January 2014 through February 2016.

20. Defendants, their co-conspirators, and others under their control caused investors to mail their investments or to transfer their investments via wire, with each mailing or wire being a separate execution of the scheme to defraud.

21. Rather than use or invest the money as implied or promised, defendants, their co-conspirators, and others under their control used investor money to make redemption and interest payments to prior investors and to pay the operating expenses of Aequitas. Those expenses included private jets and pilots, office renovations, an office expansion in New York, and extravagant events for staff, registered investment advisers, and potential investors.

22. Despite accumulating operating losses that defendants, their co-conspirators, and others under their control concealed in the above-described Holdings Note, defendants, their co-conspirators, and others under their control continued to raise funds from new investors and convinced prior investors both to delay redemptions and to invest additional money.

23. For the purpose of facilitating the conspiracy and scheme to defraud, including by diverting investor money to pay operating expenses and to repay other investors, defendants, their co-conspirators, and others under their control used and caused the use of interstate wires to, through, and from Oregon to communicate with Bank of America's CashPro system, an online digital banking platform, to track incoming investor money and to transfer the same among and between various Aequitas-controlled and third-party financial accounts, with each such use of interstate wires being a separate execution of the scheme to defraud.

24. Defendants, their co-conspirators, and others under their control intentionally did not disclose the following material facts to outside accounting and legal firms: the Aequitas companies were consistently in liquidity and cash-flow crises; defendants and others used new investor money to repay earlier investors and to pay operating expenses rather than to buy trade receivables or other investments; and there was insufficient collateral to secure the notes sold to investors.

25. Defendants, their co-conspirators, and others under their control also failed to disclose the truth about the Holdings Note, including that it was used to conceal accumulating operating losses and that it was severely under-collateralized.

26. In or about March 2016, Aequitas was taken into receivership, at which time investors were owed more than $600 million.

All in violation of 18 U.S.C. § 1349.

## COUNTS 2-29
### (Wire Fraud)
### (18 U.S.C. § 1343)

27. Paragraphs 1 through 9 of the Introductory Allegations and paragraphs 11 through 26 of the Manner and Means and Scheme to Defraud of Count 1 are incorporated herein.

28. On or about the dates set forth below in each Count, in the District of Oregon and elsewhere, defendants JESENIK, MacRITCHIE, and RICE, having knowingly devised and intended to devise a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, half-truths, representations, and promises, knowingly caused the following interstate wire communications for purposes of attempting to execute and executing the above-described material scheme:

| COUNT | DATE | DESCRIPTION OF EXECUTION |
|---|---|---|
| 2 | August 4 and 5, 2015 | Email exchange between co-conspirator Oliver, JESENIK, and RICE, Subject: Redemption Update. |
| 3 | August 13, 2015 | Confirmation of first $1,304,800.00 wire to IOF II account 6621 at Bank of America. |
| 4 | August 13, 2015 | Confirmation of second $1,304,800.00 wire to IOF II account 6621 at Bank of America. |
| 5 | September 2 and 3, 2015 | Email exchange between co-conspirator Oliver and RICE, Subject: Redemption Spreadsheets – 9-2-15. |
| 6 | September 30 and October 1, 2015 | Email exchange between JESENIK, RICE, and co-conspirator Oliver, Subject: Cash Dash 9/30. |
| 7 | October 1, 2015 | Confirmation of first $500,000 wire to ACF Private Note account 7834 at Bank of America. |
| 8 | October 1, 2015 | Confirmation of second $500,000 wire to ACF Private Note account 7834 at Bank of America. |
| 9 | October 1, 2015 | Direction to wire $246,887.67 from ACF Private Note account 7834 at Bank of America to an investor's account at California Bank and Trust. |
| 10 | October 1, 2015 | Direction to wire $126,085.99 from ACF Private Note account 7834 at Bank of America to an investor's account at California Bank and Trust. |
| 11 | October 1, 2015 | Direction to wire $78,616.44 from ACF Private Note account 7834 at Bank of America to an investor's account at Wells Fargo Bank. |
| 12 | October 1, 2015 | Direction to wire $20,965.23 from ACF Private Note account 7834 at Bank of America to an investor's account at Torrey Pines Bank. |
| 13 | October 15, 2015 | Direction to transfer $3,000,000.00 from Aequitas AIO account 8314 to ACF Operational account 7815 within Bank of America. |
| 14 | November 3, 2015 | Confirmation of $500,000 wire to ACF Private Note account 7834 at Bank of America. |
| 15 | November 4, 2015 | Direction to wire $350,000.00 from Aequitas AIO account 8314 at Bank of America to Aequitas Global Inc. Opp. account at Societé Generale. |

| 16 | November 16, 17 and 18, 2015 | Email exchange between RICE and an RIA, Subject: Aequitas DD. |
|----|------------------------------|---------------------------------------------------------------|
| 17 | November 25 and 30 and December 1, 2015 | Email exchange between co-conspirator Oliver, RICE, and JESENIK, Subject: [blank]. |
| 18 | December 6 and 7, 2015 | Email exchange between RICE, JESENIK, and co-conspirator Oliver, Subject: Redemptions. |
| 19 | December 8, 2015 | Confirmation of first $500,000 wire to ACF Private Note account 7834 at Bank of America. |
| 20 | December 8, 2015 | Confirmation of second $500,000 wire to ACF Private Note account 7834 at Bank of America. |
| 21 | December 8, 2015 | Confirmation of third $500,000 wire to ACF Private Note account 7834 at Bank of America. |
| 22 | December 9, 2015 | Direction to wire $848,076.70 from ACF Operational account 7815 at Bank of America to an account at Columbia State Bank for a referral payment. |
| 23 | December 9, 2015 | Email from an Aequitas employee copied to RICE, Subject: redemption messaging. |
| 24 | December 23, 2015 | Confirmation of $2,000,000 wire to IOF II account 6621 at Bank of America. |
| 25 | December 23, 2015 | Confirmation of $269,827.36 wire to IOF II account 6621 at Bank of America. |
| 26 | December 23, 2015 | Direction to wire $1,500,000 from ACF Private Note account 7834 at Bank of America to an investor's account at Wells Fargo Bank. |
| 27 | December 30, 2015 | Confirmation of $2,000,000 wire to IOF II account 6621 at Bank of America. |
| 28 | December 30, 2015 | Confirmation of $354,000 wire to IOF II account 6621 at Bank of America. |
| 29 | December 29 and 30, 2015 | Email exchange between Aequitas Investor Services and an RIA, Subject: Stern – Case: 00011534:ref:_00D30XID._500333sJgdl:ref |

All in violation of 18 U.S.C. § 1343.

///

## COUNT 30
### (Conspiracy to Commit Money Laundering)
### (18 U.S.C. § 1956(h))

29.     Paragraphs 1 through 9 of the Introductory Allegations, paragraphs 11 through 26 of the Manner and Means and Scheme to Defraud of Count 1, and Counts 2 through 29 are incorporated herein.

30.     Beginning no later than in or about June 2014 and continuing through in or about February 2016, in the District of Oregon and elsewhere, defendants JESENIK, MacRITCHIE, and RICE and others, known and unknown, did knowingly combine, conspire, and agree with each other and with others, known and unknown, to knowingly engage and to attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property, to wit, investment proceeds, in amounts greater than $10,000 that were derived from a specified unlawful activity (mail and wire fraud) in violation of 18 U.S.C. § 1957.

### MANNER AND MEANS OF THE CONSPIRACY

31.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

32.     Defendants and their co-conspirators, including former Aequitas Executives Brian Oliver and Olaf Janke, engaged in the scheme to defraud set forth in Count 1 and caused the interstate wires alleged in Counts 2 through 29 of this Superseding Indictment, as well as other interstate wires and mailings, raising more than $400 million from January 2014 through February 2016.

/ / /

/ / /

33. Defendants and their co-conspirators combined and agreed to engage in monetary transactions involving proceeds of the above-described fraud scheme in amounts exceeding $10,000 for the following purposes, among others:

- Direct payments to defendants and their co-conspirators in the forms of salaries, partnership distributions, buyouts of equity interests in Aequitas entities, and loans;
- Payments for the personal New York City residence of defendant MacRITCHIE; and
- Payments for fringe benefits and special perquisites for the exclusive use and enjoyment of defendants and their co-conspirators, including a membership in Exclusive Resorts, a purveyor of luxury vacation accommodations.

All in violation of 18 U.S.C. § 1956(h).

## COUNT 31
### (False Statement on a Loan Application)
### (18 U.S.C. §§ 2, 1014)

34. Paragraphs 1, 4, and 5 of the Introductory Allegations are incorporated herein.

35. On or about January 15, 2016, in the District of Oregon, defendant JESENIK aided, abetted, counseled, commanded, induced, and procured the making of a false statement for the purpose of influencing the action of Wells Fargo Bank, a federally insured financial institution, in connection with an application for an advance to ACF of $4.2 million under a Receivables Loan Agreement, in that he directed to be transmitted to Wells Fargo a statement certifying, among other things, that "[n]o Potential Event of Default or Event of Default has occurred and is continuing," when in truth and in fact, as he well knew, ACF had already experienced an "Event of Default" as defined in that agreement, to wit defaults on more than

///

///

$2.5 million in principal repayments due to investors in ACF Private Note, with millions of dollars more in such defaults expected in the coming weeks.

All in violation of 18 U.S.C. §§ 2, 1014.

## FIRST FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

36. Upon conviction of the offenses alleged in Counts 1-29 of this Superseding Indictment, defendants JESENIK, MacRITCHIE, and RICE shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from that offense.

37. If the above-described forfeitable property, as a result of any act or omission of defendants:

 (a) cannot be located upon the exercise of due diligence;

 (b) has been transferred or sold to, or deposited with, a third party;

 (c) has been placed beyond the jurisdiction of the court;

 (d) has been substantially diminished in value; or

 (e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

/ / /

/ / /

## SECOND FORFEITURE ALLEGATION
## (18 U.S.C. § 982(a)(1))

38. Upon conviction of the offense alleged in Count 30 of this Superseding Indictment, defendants JESENIK, MacRITCHIE, and RICE shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1), any and all property, real or personal, involved in the money laundering offenses and all property traceable to such property, including but not limited to a money judgment for a sum of money equal to the amount of property involved in those offenses.

39. If the above-described forfeitable property, as a result of any act or omission of defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

Dated: July 13, 2022

A TRUE BILL.

███████████████

OFFICIATING FOREPERSON

Presented by:

SCOTT ERIK ASPHAUG
United States Attorney

*/s/ Ryan W. Bounds*

RYAN W. BOUNDS, OSB #000129
CHRISTOPHER L. CARDANI
SIDDHARTH DADHICH
Assistant United States Attorneys